We'll be moving to the next case. I think both of our counsel in that case are in person also. My understanding is that the appellee's counsel wants to test a piece of... Are you good then? Okay. All right. And we'll be starting with appellant's counsel. And when you're ready, go ahead and let us know how much time you plan to reserve for rebuttal. Thank you. Test first. That was good. I think he's good. You may proceed when you're ready. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Alex Tomasevic on behalf of the appellant and plaintiff below, Cheryl Clark. I'd like to reserve five minutes for rebuttal, if I may, please. Thank you. The very short but very significant decision to dismiss from the lower court should be reversed because it's a very dangerous example of heralding forward over substance and ignoring legislative purpose. First, it was error for the trial court to rule that these statutes don't apply to this policy and this coverage simply because of the way J.C. Penney papered up its coverage some 30 years prior, out-of-state with one of its own subsidiaries essentially selling coverage to itself. Second, it was error for the court to hold that this policy was not eligible or did not need the protections of Section 10113.72, similarly because J.C. Penney had essentially called it a group policy. Both of these errors, as we'll explain, lead to absurd results. Starting with the first issue, and as we often do in cases like this, we look to the statutes themselves, right? Well, the statutes here we know are written broadly with a pro-consumer purpose, but unfortunately they don't include a specific definition of the word policy. What they do include at subsection C of 10113.71 is a definition of life insurance policy that says a life insurance policy includes but is not limited to a life insurance policy or group policy. Now, unfortunately, the legislator didn't give us a definition of what not included to means, but we know from practice what people are doing when they use that language. They are trying to maintain flexibility. They are trying to maintain breadth, and that's exactly what the statutes do here, and they do not, as my friends argue, adopt a very strict and very limited view of what a policy is. Nonetheless, both sides agree that we can't just look at that language or the statutes. We have to go on to legislative purpose and intent. The McHugh case is important here, the California Supreme Court. We have the benefit here of a Supreme Court case. Counsel, can I pause you for a second? Certainly. I had a little bit of trouble with the briefing on reliance on the statutory interpretations. It seems to me that the statutes don't really answer the question one way or the other. Sometimes a policy can include a certificate of insurance. Other times a certificate of insurance is just evidence of insurance. And so is there anything that you would specifically point to in the statutes that would say either that a policy always includes a certificate of insurance as part of the policy terms or never? Well, Your Honor, there are the short answer is there's nothing that clean, unfortunately. The best evidence we have before I get to the legislative intent in history and McHugh and other interpretive decisions is that subsection C that says a policy is not limited to these other kinds of documents. I mean, and the reason why I paused you before getting into McHugh is that doesn't seem a case that seems apt here because McHugh involves an insurance policy that was issued and delivered in California, and that's the very question that we're trying to determine here. So tell me why you think McHugh has any relevance to this case. Certainly, Your Honor, because it is the highest court in California telling us how to interpret these statutes when there is an ambiguity in them. I mean, I think what we're getting at here is that we all acknowledge there's some ambiguity in some respects, and the California Supreme Court tells us what to do about that. And it reminds us with these statutes in particular that our core task is to give effect to their underlying purpose. That's the McHugh decision at page 213. And so what do we do in turn? We open up that purpose and we open up that legislative intent. And I know it's in a couple of places in the record, but Record Volume 2 at page 79 is particularly important. It summarizes exactly why we have this statute. It is to provide consumer safeguards against the loss of premiums. It is intended, the statute, to make sure that policyholders have sufficient warning that their premium may lapse due to nonpayment of premium. So is it your view that an insurance policy that's issued outside of the state but delivered to a California resident would also be governed by these California statutes, the notice and grace period statutes? Well, that's not this case, but I do believe that could be the case, Your Honor. For example, there's the doctrine under the Moglin decision that says there's a renewal of statutes. For example, if someone brings a coverage into California and has been there for years, paying the policy for years, as was the case here. So California has an intention to spread wide and try to regulate any manner of insurance policy that's issued throughout the country. So long as that policy was delivered to a California resident. Your Honor. It's a pretty sweeping argument. I guess I would want to know where in California law that, and it seems inconsistent with the language that says a policy issued and delivered in California. Your Honor, the court doesn't need to make that holding to reverse the decision here, especially when we're dealing with a motion to dismiss and allegations that must be taken as true. But nonetheless, to answer your question, it is not the, perhaps the intent of California to sweep every possible insurance policy that ever might touch its shores, but it is its right under Federalism principles to regulate insurance within its borders. And it, you know, I want to borrow a phrase from my opponent's brief where they say, well, on page 44 in particular, whether a policy can be regulated by California or certificate depends on the context. They say that. I was shocked to see that when we're dealing with a motion to dismiss argument, but they acknowledge that it depends on the context. So in your example, if a serviceman just comes for a training with his policy, doesn't make a premium payment, well, then that's not going to probably trigger the statutes. But that's not the case before us here. Here we have a situation where they intentionally marketed Californians. A Californian living in California during all relevant times purchased the policy, paid all premiums from California, corresponded only from California. The risk, insurance is important because we're dealing with risk. And insurance asks itself, where is the risk? Where is the benefit going to be paid? Who is the benefit going to be paid to? The beneficiary in this case was always in California. So under the facts of this case, it is absolutely appropriate and, in fact, California's right to bring this statute within the ambit or this policy within the ambit of its statutes. It starts to better answer your question with California Insurance Code Section 41 that starts with, well, all policy in the state can be regulated by the California Insurance Code, Your Honor. Can I ask you to discuss Dorman and Humphrey? Those seem to me to be more relevant cases, Dorman being the Ninth Circuit one in Humphrey, a California Supreme Court decision that adopted Dorman's reasoning. And in those cases, it seems to be that whether a certificate of insurance is a part of the policy depends on whether the certificate itself adds or detracts or has different terms and conditions than the policy itself. Why shouldn't we be guided by those principles in this case? Well, I think those provide guidance, but they are not alone dispositive. Okay. Well, first, we of course, I think the same result that happened in Dorman should happen here as well. But first of all, remember, in Dorman, they had the benefit of a full record. This was a decision after judgment, not a motion to dismiss. Pleading is taken as true. But nonetheless, to answer your question, yes, Dorman provides a framework. And the only Ninth Circuit framework that I'm aware of, or I think either party briefed, that says, well, listen, if the certificate is part of the policy naturally form over substance is a big theme here. If the certificate supplies important terms or if the group master policy references a certificate, well, then, in fact, it should be and will be considered part of the policy. That is absolutely useful to this case. And in fact, I think dispositive on these facts, even if we don't... I don't think Dorman said that if a master policy merely references a certificate, it's part of the policy. Where do you see that in that case? It doesn't say if it references. It says that if the group master policy requires the issuance of certificate, then it should be viewed as part of the policy. And that is exactly what happened here as well. Now, Dorman had additional other facts. For example, in Dorman, there was no... Like here in Dorman, you don't know until you get the certificate what the name of the insured is. You don't know what their premium is. You don't know what the effective date of coverage is, start date or end date. You don't know any of the key terms that in a contract's 101 parlance would complete the contract. That ultimately, I know Dorman has a short opinion, but ultimately is what Dorman is getting at, which is that if you have to read these together as a matter of substance in order to know what the meeting of the minds truly was, well, then they have to be read together and are part of one another. Let me ask this. Are there any different terms or is there anything in the certificate of  itself added or added terms to the insurance policy? Well, I want to be clear that this isn't an or proposition. We don't need one or the other to be the policy. They can be read together as the contract of insurance. But the difference... Suppose I disagreed with you and that you actually need to have different terms and conditions. Are there any in the certificate that would reflect that the certificate itself was adding to the policy? Yes, and at the most fundamental level. The name of the insured appears in the certificate and not in the group master policy. The amount of premium owed appears in the certificate and not in the group master policy. The effective date, including the start date and the anniversary date, appears only in the certificate and not the group master policy. The group master policy, I think it's also important, references the certificate very glowingly and speaks of it as if it is its own actionable and important piece of paper. For example, the group master policy says that the parties are covered under the certificate. That's at Volume 2, 203. It says that the certificate is what affords the coverage, same page. It says that as long as the certificate stays in force, the coverage stays in force. That's at Record Page 204. It says that the certificate triggers the all-important cancellation free look policy. Footnote here, all policies, I think in all States, especially California, get a free look provision. If you decide you didn't want to buy it, you can return it, get your premiums back. That's a mandatory requirement. That provision appears in the certificate that says you get a 90-day cancellation period from the date on the certificate. You don't get that date in the group master policy. And also, I think it's worth noting that the individualized certificate is the only thing that they gave Ms. Stoel, the late Ms. Stoel here, to describe the terms. They didn't give her the group master policy. I would put it this way. If Ms. Stoel walked into court and tried to sue on a group master policy without having the certificate to go along with it, she'd be subject to defenses like, well, how do we know you're a member of this policy? How do we know what the consideration was? These contracts 101 things that we only satisfy if we read the certificate, perhaps in lieu of, but I think especially in conjunction with, the group master policy itself. So I guess just to round this out, are you aware of any insurance policies that don't ever issue certificates of insurance? In effect, you're saying every certificate of insurance is always a part of the policy, which means that any certificate that's delivered to a California resident is subject to these laws. You're being consistent, but I just wanted to understand the implications of your argument. Well, to take Yeah, let me see if I can add to that. And I know we're taking into your rebuttal time, but if I think that there has to be under California law some certificates that are not the policy, right, what kind of, it seems like your explanation of why the certificate here is part of the every certificate. So it's very similar, I think, to what Judge Sanchez said. But for somebody who's skeptical that that can be true under California law, then give me a line why your certificate would be included but some others might not. Because every certificate is going to have the person's name on it, those kind of things. So that line doesn't really help, I don't feel like. Well, Your Honor, I do think that whenever a certificate completes the key terms that are only the terms that are enforceable in a court of law, then it is going to be read and must be read in conjunction with the policy. Is there a hypothetical certificate out there that doesn't include all those things? Certainly. It could have the name alone. It could be some kind of a group or workplace policy that, now, none of this is in the record, by the way, and it's not the case before us. But I want to answer your question fairly, which is to say that there certainly could be workplace policies where there's a fixed amount. And there's no premium paid. It's just a benefit. You work for Google, congratulations, you're going to get a free $100,000. My wife has this. Not at Google. But a free $100,000 policy just for being an employee. It doesn't get taken out of your paycheck. There's no obligation on your part. Just by being an employee for at least 90 days or whatever the period is, you get this coverage. And the certificate is nothing more than your piece of paper that reflects the coverage that's already fully described, other than your name, perhaps, in the group master policy, the price, all of the other key terms. So there is a distinction. But, again, I want to stress that's not the facts here. Okay. I think we understand that. And I want to be able to give you some time for rebuttal, but I'm not going to do that if you keep talking. Right. Unless my colleagues have. Would you like some time for rebuttal? I would, Your Honor. All right. Five minutes, if appropriate. No, no. We're not going to give you five minutes. Unless my colleagues want to talk to you. We'll give you a couple minutes, but let me go ahead and let the other side present their case. Thank you. Good morning, Your Honors. Larry Golub for Transamerica Life Insurance Company. This case really is very simple. And I can see in the questions that the Court has looked at the statute. This, these two statutes, and these two statutes use the word policy. They don't use the word certificate. They don't use the word certificate holder. And that's important because, as stressed in our, in our brief, there are an array of California statutes. They, and it was mentioned, some say policy contract agreement or a certificate. Some say certificate holder. The California legislature knows exactly how to put a statute together if they want to cover certificate holders. One of the cases, one of the statutes that I would have mentioned if I had a chance to respond to the reply is California, California Insurance Code 10235.40. 10235.40 is the genesis of these statutes. The legislative history, the documents we provided at page 3- I'm going to get the right page for you. 3-384 says that these statutes we're considering came out of the long-term care statutes. In 1997, the California legislature enacted these statutes, and then it was taken as the basis for this, for our statutes. But what those statutes say in 10235.40, subdivision say, subdivision A, an individual long-term care policy or certificate shall not be issued until the applicant has provided some notice. It then goes in B, and it talks about the insurer shall notify the insured of the right to change the written designation. In C, if the policyholder or certificate pays the premium, and this is actually, it also says policyholder certificate in D and E, five times in this statute, and C is really important because C talks about the distinction between what he may want to call a employer-based group policy, where the employer is paying the premiums, versus this kind of situation where Delane Stoll was paying the premiums. This statute has a provision that says if you're no longer on your employee deduction program, then you're the one, then the certificate holder will get the notice. That's what we have here. We don't have a statute that says anything about the certificate holder. But, Mr. Golub, I, just to once again express my reluctance to go along with the statutory arguments that both you and opposing counsel are making, there is a different statute under a group life policy, section 10206, that does have a definition section that says application or enrollment process means any or all of the steps required of a named insured in applying for a certificate under a group policy of life insurance. I guess it's hard for me to see some talismanic effect to policy or certificate when it seems clear that sometimes a certificate adds terms to a policy and can become part of the policy, and other times it does not, and it's just evidence of insurance. I just don't see the answer lying in the statutes themselves, but more so with respect to whether the certificate here added or created different terms that would make it truly part of the insurance policy itself. And so my question is, if you look at it on that score, are there substantive terms in the certificate that add to or create more policy terms? You know, we've gotten off on this other issue, the Dorman case. And by the way, there's also the Bosman case that the Supreme Court came to the opposite conclusion two years before Dorman in a situation because the certificate was just evidence of insurance. It wasn't its own, you know, self-actuating policy or it wasn't really part of the policy. In the Gambino case that they also cite, all of those cases were coverage cases, and the question was whether a director who wasn't getting paid was going to be an employee under the policy and they needed the certificate to supplement the policy to get to that answer. It was a coverage question. In the Gambino case, which was mentioned in the briefs, the issue there was whether the exclusion for prescription drugs where the policy said if it's a prescription drug and you misuse it, there's no coverage. There was a California statute that said, well, wait, wait. It depends. If it's prescribed and it's misused, there's coverage. So it was a coverage issue. And the same thing in the Bozeman case. Here, we're not talking about a coverage issue. All we're talking about is what do these statutes say and who is to provide notice. That's not an insurance coverage issue. That's not an insurance policy interpretation issue. That's solely a statutory construction issue. And this statute says policies, it covers policies, you know, issued in California. And I just want to also mention, it's in the briefs, but the year before this case, this statute was drafted in 10110.6, the year before, the same legislature says if a policy contract, certificate, or agreement offered, issued, delivered, or renewed, whether or not in California, that statute would have applied to Delane Stoll. It covers the waterfront, even outside California. We don't have that here. And you can't reconcile these statutes to get the same result. The language matters, and the legislative language matters, including the fact that while this statute was going through the legislative process, on June 19, 2012, the statute, or the bill at that time, AB 1747, was amended to delete the word insured, not once, six times. And it added the word policy owner. Under, you know, California statute, she's not a policy owner. She's a certificate owner. She never had a policy. And whether Mr. Thomas Sevak believes she should have been sent a policy is not the question. And the legislature, if it wanted certificate holders to get these notices, it very easily could have said it. It said it before, and it could say it again. And it could amend the statute to fill what he may believe is a deficiency, but that's not what the statute says. Can you answer my question? Are there any terms in the certificate of insurance that differ from the master policy? Not material terms. The terms that Mr. Thomas Sevak referenced, the name, the premium amount, those, if you look at the two documents together, they're essentially the same. There's a few little tweaks because one's a policy, one's a certificate. The exclusion for suicide, the contestability period, the main coverage kind of questions that come up in a life insurance policy are the same. There's no need to make this certificate part of the policy to fall within the Dorman rubric. And the policy says, the policy specifically says under entire agreement, says the policy includes the policy and its attachments. The certificate of insurance is just evidence of coverage, which is true. It gives you evidence. Delane Stoll knows that she has coverage under this group policy. But it has nothing to do with why we're here today on these, on this notice provision. So I think thank you. Do you have anything more you want to? Let's see. I didn't know I would get the chance to speak extemporaneously, so. We won't be mad at you. The only thing I would mention is there's a case called Larone that's in the briefs. And Larone is a, another district court case that came out after this. And the judge in the central district came to a different conclusion. Partially on the 10113.72 argument where the statute says individual policy, he, he agreed with Judge Mendez-Blow in our case. .72 says individual policy. This is not an individual policy. No matter all the gymnastics that plaintiff tries to do to get this certificate to become a policy, under .72, there is no, there's only an individual policy covered, no group policy. On the .71 issue, he recognized what Judge Mendez did. He, then he got, then he went to the Gambino-Dorman line of coverage and followed that, that coverage issue dichotomy, not focusing on the statutes. In fact, he relegated the statutes to a footnote. And it's a kind of confusing footnote, but he never confronts the language of the statutes. And I think, I believe that Judge Mendez looked at the statutes, looked at the plain language, interpreted them as numerous courts look at them, saw, even at the trial court level, all of the other statutes that use certificate holder, use insured, whatever, rather than just policy, and he came to the right decision. One point that was mentioned by Mr. Tomasevic before was you've got to look at subsection C of the statutes of 11, 10113.71C, and the language that says a life insurance policy includes but is not limited to an individual life insurance policy and a group life insurance policy. And we get taken to tax because we use the ellipses for including but not limited to. But the fact is, at all times, it's the word policy. A life insurance policy includes an individual life and a group life. And, in fact, if you go back into the legislative history that we have provided, and especially, this is at page 2, ER55, this is the first amendment to the statutes. When they originally proposed the statutes, that language in C said a life individual said a life insurance policy includes but is not limited to an individual life insurance policy, an individual variable life insurance policy, and a group policy. They deleted the variable policy because it was essentially redundant because an individual policy is an individual policy whether it's a variable life, a universal life, a term life, a whole life. It's still an individual policy. And the point here, because you don't see group policies in section A, the group point here was to provide coverage for a real group policy under this statute, but not under .72. So there is no language in this statute that implies or suggests that a certificate holder is to get these notices. Not that maybe that isn't a good idea, but that's an issue for the legislature to amend these statutes, not for the court to interlineate certificate holder or policy holder. So in your view, if a group life insurance policy certificate holder got a certificate whose terms differed in meaningful ways from the master policy, they would still not be sorry, not notice, but grace periods under this statute because of the absence of the word certificate in this definition. I think in this context, that's correct. It doesn't mean that the certificate holder can't get coverage through that certificate for a real coverage issue. If the certificate is broader and provides something that the policy doesn't state. The legislature implicitly abrogated the Supreme Court's decision in Humphrey. Pardon me? The legislature abrogated the Supreme Court's decision in Humphrey that certificate terms that are different from the master policy are part of the policy. You're saying in this case, Humphrey is no longer a good law based on this grace period provision. Based upon the statute, yeah, the statutory construction, this is not a coverage case. This is just saying the, you know, who gets notice. And the Supreme Court in the McHugh case that Plaintiff's counsel talks about addressed one issue. It addressed the timing. Do the statutes apply prior to the enactment date, prior to 2013? It said that. But the McHugh decision says nothing about group policies, nothing about certificate holders, nothing comparing group policies. And when it talks about the coverage, it typically uses the word policy owner. And that's the language of the statute. All right. Thank you, counsel. We have no further questions. We'll give you two minutes for rebuttal. Thank you very much. I think this court should have paused making a decision based on things like whether differences are meaningful within a number of documents when the documents are disputed and we don't even have all the documents. Remember here, we don't even have the certificate that was originally issued to Ms. Stoll. Well, we have one that Transamerica issued many, many years later under different coverage. That brings me back to my earlier point about this is a particularly poor decision on a motion to dismiss. But to deal with that more up front, even if we assume the certificate is the appropriate certificate and the group master policy is the one and only group master policy, it is absolutely true that the differences between the two are material and you cannot have an enforceable contract without reading both of them together. And you had challenged me earlier to provide some more guidance in the insurance code that stands for that. Both sides cite insurance code section 380, which defines a policy as that document which has the contract terms. But there's a relatively small discussion, if any discussion, on section 381, which talks about how a policy is not an enforceable contract or a policy unless and until it has the name of the insured, the start date, the kind of coverage, the amount of the premium. It is not a contract until those key terms, which are only in the certificate and not in the group master policy, are read together or in existence together. And that's why you can't read the certificate without the policy. I would ask the court to look at section 381. Finally, the court should be mindful that adopting Transamerica's interpretation leads to absurd results. It means that policies, even where there's no dispute that they were issued in California, the only notice required is for JCPenney to send notice to itself, not to the person actually responsible for the premiums, which is the whole point of the statutes, to send those people sufficient warning that there's a problem and they need to get their coverage. In fact, it's totally possible that eventually Transamerica and other companies, if they're allowed, will just rejigger all of their policies to simply be made through an intermediary in whatever state, pick it, has better laws than California, but set up a subsidiary in Montana, perhaps, and issue all of our policies through there. Our group will just be anyone who wants the policy, and we'll just run it through Montana, call it a group policy, and therefore none of these statutes ever apply. That can't be what the legislature intended and what McHugh confirmed is an important purpose of the statutes to protect against forfeitures and protect consumers. Thank you. All right. Thank you, counsel. Thank you to both sides for your helpful argument this morning. We'll be moving on.
judges: VANDYKE, SANCHEZ, Lasnik